UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF MISSISSIPPI
NORTHERN DIVISION

CHARLES LAVEL STRINGER                                                    PLAINTIFF

V.                                              CIVIL ACTION NO. 3:24-CV-193-DPJ-ASH

FRANK BISIGNANO, COMMISIONER
OF SOCIAL SECURITY                                                        DEFENDANT

ORDER

This Social Security case is before the Court after Plaintiff Charles Lavel Stringer

appealed the final decision of the Commissioner of the Social Security Administration (SSA)

denying his application for child's-insurance benefits.  Compl. [1] at 11.  On February 17, 2026,

United Magistrate Judge Andrew S. Harris entered a Report and Recommendation [46]

recommending the case be remanded to the Commissioner for further proceedings under

sentence four of 42 U.S.C. § 405(g).  R&R [46] at 1.  Both parties objected to the R&R.  *See*

Stringer Objs. [47, 50]; Comm'r Obj. [49].  Plaintiff also filed a motion for court costs and legal

fees [48].  For the reasons stated below, the Court adopts Judge Harris's recommendation despite

the parties' objections and also denies Plaintiff's motion.

I.      Facts and Procedural Background

On February 4, 2021, Stringer filed a Title II application for child's-insurance benefits,[1]

which required a showing that he suffered a medically determinable impairment when he turned

---

[1] As explained by the Supreme Court,

> Congress amended the Social Security Act in 1939 to provide a monthly benefit
> for designated surviving family members of a deceased insured wage earner.
> "Child's insurance benefits" are among the Act's family protective measures.  An
> applicant qualifies for such benefits if she meets the Act's definition of "child," is

22 in 1985. ALJ Order [32] at 18.[2]  When the SSA denied Stringer's initial application, he requested a hearing before an administrative law judge (ALJ), which the SSA granted.  ALJ Decision [32] at 142.  The ALJ found that Stringer was ineligible for child's-insurance benefits. *Id.* at 146; R&R [46] 1–2.

Stringer appealed this decision to the Appeals Council.  The issue in that appeal that remains relevant here relates to the ALJ's attempt to subpoena Stringer's then-treating physician, Dr. Krishan K. Gupta.  Appeal Order [32] at 154.  When Dr. Gupta did not appear at the hearing, the ALJ proceeded, concluding that the doctor's testimony would be immaterial because he did not treat Stringer before 1985.  *See* 1st Hr'g Tr. [32] at 107.  The Appeals Council seemed to tacitly reject the materiality ruling by finding instead that Dr. Gupta had not been properly served with a subpoena to appear at the hearing.  *See* Appeal Order [32] at 154.  It therefore remanded the case to a new ALJ with instructions to "[e]nsure that any subpoena issued to an individual that is to testify in the claimant's case, including, but not limited to, Dr. Gupta, is specific and issued to the subpoenaed individual following the procedures outlines in HALLEX I-2-5-80." *Id.*

The new ALJ dutifully subpoenaed Dr. Gupta to appear and testify at Stringer's September 11, 2023 hearing.  Subpoena [32] at 329.  But Dr. Gupta did not comply with the subpoena.  Instead, he wrote the ALJ that he would be out of the country on the hearing date and most of September 2023.  1st Gupta Letter [32] at 334.  Dr. Gupta also sent a follow-up letter, informing the ALJ he would be unavailable until October 15, 2023, and that he expected

---

unmarried, . . . is under a disability which began prior to age 22, and was
dependent on the insured at the time of the insured's death.

*Astrue v. Capato ex rel. B.N.C.*, 566 U.S. 541, 547 (2012) (citations omitted).

[2] Page numbers in this Order reflect CM/ECF numbering.

someone to pay his expert-witness fee of $10,000 per day if he were to testify.  2d Gupta Letter [32] at 555.

Like the first ALJ, the second found that Dr. Gupta's testimony would be immaterial because Dr. Gupta lacked "firsthand knowledge" of Stringer's condition in 1985.  3d Hr'g Tr. [32] at 74.  He therefore proceeded without him.  *See* ALJ Decision [32] at 17–18; *id.* at 14 (deciding not to enforce subpoena because ALJ "no longer consider[ed] the requested testimony from Dr. Gupta material").  The ALJ later denied Stringer's application, finding he had not shown a medically determinable impairment before he turned 22 years old.  *Id.* at 17–18.

Stringer then turned to this Court, appealing the denial of his child's-insurance benefits on April 5, 2024.  Compl. [1].  On February 17, 2026, Judge Harris issued his R&R recommending the Court remand the matter for further proceedings under 42 U.S.C. § 405(g).  R&R [46] at 1.  Both parties objected to the R&R, Stringer on February 23, 2026, and the Commissioner on March 3, 2026.  *See* Stringer Obj. [47]; Comm'r Obj. [49].  Stringer filed a subsequent objection, responding in part to the Commissioner's objection but also discussing points made in the R&R.  *See* Stringer Obj. [50].  Stringer also filed a motion for court costs and legal fees.  *See* Mot. [48].  Defendants have not responded to the motion, and the time to do has passed.

II.     Standard of Review

Title 28 U.S.C. § 636(b)(1)(C) governs R&Rs.  It requires the Court to "make a de novo determination of those portions of the [R&R] or specified proposed findings or recommendations to which objection is made."  28 U.S.C. § 636(b)(1)(C); *accord* Fed. R. Civ. P. 72(b)(3) ("The district judge must determine de novo any part of the magistrate judge's disposition that has been properly objected to.").  The Court's review must be limited to "those issues to which an

objection is made," *Longmire v. Guste*, 921 F.2d 620, 623 (5th Cir. 1991), and the Court need not

"reiterate the findings and conclusions of the magistrate judge," *Koetting v. Thompson*, 995 F.2d

37, 40 (5th Cir. 1993).

The standard of review in Social Security appeals is narrow:  The court asks only whether

"(1) the final decision is supported by substantial evidence and (2) . . . the Commissioner used

the proper legal standards to evaluate the evidence." *Webster v. Kijakazi*, 19 F.4th 715, 718 (5th

Cir. 2021).  "Substantial evidence is merely enough that a reasonable mind could arrive at the

same decision; though the evidence must be more than a scintilla[,] it need not be a

preponderance." *Id*. (alteration in original) (internal quotation marks omitted) (quoting *Taylor v.

Astrue*, 706 F.3d 600, 602 (5th Cir. 2012)).

III.    Analysis

The Court will begin with the Commissioner's objection before addressing Stringer's two

objections and his motion.

A.    Commissioner's Objection

Judge Harris concluded that because Stringer was unrepresented during the hearing, the

ALJ had a duty to develop the record that included enforcing the subpoena after Dr. Gupta failed

to appear.  R&R [46] at 8.  The Commissioner challenges that recommendation, Comm'r Obj.

[49] at 5, but the Court adopts it.

The Fifth Circuit has "explained that because hearings under the Social Security Act are

non-adversarial, '[t]he hearing examiner has the duty, accentuated in the absence of counsel, to

develop the facts fully and fairly and to probe conscientiously for all of the relevant

information.'" *Sun v. Colvin*, 793 F.3d 502, 509 (5th Cir. 2015) (quoting *Ware v. Schweiker*, 651

F.2d 408, 414 (5th Cir. 1981)).  Indeed, the federal regulations state that the SSA will "make

4

every reasonable effort to help [a claimant] get medical evidence from [their] own medical sources." 20 C.F.R. § 416.912(b)(1) (2026). "Every reasonable effort means that the agency will make an initial request from the medical source and, if necessary, will later make a follow-up request." *James v. Kijakazi*, No. H-22-703, 2022 WL 17650596, at *2 (S.D. Tex. Dec. 13, 2022).

Those reasonable efforts may include subpoena enforcement. As Judge Harris correctly noted, an ALJ does possess the authority to seek an order enforcing a subpoena. R&R [46] at 5–6 (citing 42 U.S.C. § 405(e); HALLEX 02150.082). ALJs must do so when the "information is reasonably necessary for the full presentation of the case." *Id.* at 6 (quoting HALLEX 02150.082). Failing to enforce a subpoena under those circumstances will violate 20 C.F.R. § 416.912(b)(1). *See Emerick v. Saul*, No. 19-CV-2826, 2020 WL 4504638, at *3 (E.D.N.Y. Aug. 5, 2020) ("While the subpoena was important, *it was also necessary to follow up*, either by taking steps to enforce the subpoena or by letting the plaintiff know that the record was still incomplete." (emphasis added)).

Here, the ALJ found no need to enforce the subpoena he served on Dr. Gupta because Dr. Gupta did not treat Stringer during the relevant time. *See* 3d Hr'g Tr. [32] at 74; *see also* ALJ Decision [32] at 17–18. Stringer sought child's-insurance benefits after his mother died in 2021. *See* 2d Gupta Letter [32] at 555. R&R [46] at 1. To obtain those benefits, he needed to show that his claimed manic depression constituted a medically determinable impairment before he turned 22 in 1985. *Id.* at 4. Yet Dr. Gupta did not treat Stringer until 2021. *See* 2d Gupta Letter [32] at 555. Because Dr. Gupta treated Stringer so long after 1985, the ALJ stated that the doctor "speculating about what was going on in your life 30 years or more than 30 years ago, it's not

going to be persuasive to me."  3d Hr'g Tr. [32] at 65–66.  The ALJ also said the witness would

not be "material" because he would lack "firsthand knowledge."  *Id.* at 74.[3]

The Commissioner picks up the firsthand-knowledge theory in his objection, arguing that

"Dr. Gupta['s testimony] would not have changed the ALJ's decision" because he lacked "first-

hand knowledge."[4]  Comm'r Obj. [49] at 5.  But the Commissioner cites no cases adopting a

firsthand-knowledge requirement.  He instead cites 20 C.F.R. § 404.1521.  *Id.*  That section

states:

> Your impairment(s) must result from anatomical, physiological, or psychological
> abnormalities that can be shown by medically acceptable clinical and laboratory
> diagnostic techniques.  Therefore, a physical or mental impairment must be
> established by objective medical evidence from an *acceptable medical source*.
> We will not use your statement of symptoms, a diagnosis, or a medical opinion to
> establish the existence of an impairment(s).

20 C.F.R. § 404.1521 (2026) (emphasis added).

The code defines "[a]cceptable medical source" to include "a medical source who is a . . .

[l]icensed physician."  20 C.F.R. § 404.1502(a)(1) (2026).  This text necessarily means a licensed

physician may testify about impairments, and the Commissioner does not suggest that Dr. Gupta

---

[3] The ALJ also explored the dearth of time-relevant medical records with Stringer, noting that some records Stringer mentioned would no longer be available.  *See, e.g.*, 3d Hr'g Tr. [32] at 54 (informing Stringer "usually you cannot even get rec[o]rds more than seven years old from a hospital or a doctor" and concluding "[i]f we don't have them, we don't have them").

[4] The Commissioner claims Dr. Gupta lacks first-hand knowledge about Stringer's condition when he turned 22.  Comm'r Obj. [49] at 5.  This is true.  That said, Dr. Gupta does have first-hand knowledge about Stringer's health because he serves as Plaintiff's treating physician.  The Commissioner does not discuss whether this first-hand knowledge should have affected the ALJ's reasoning.

is not a licensed physician.  The code does not mention a firsthand-knowledge requirement, and without additional authority, the Court will not create one.[5]

As for Dr. Gupta, Judge Harris correctly observed that we don't know what he would have said if forced to honor the subpoena.  R&R [46] at 6.  Though the ALJ did ask Stringer to state what he thought the doctor would say, *id.*, Stringer was unrepresented, has limited education, and suffers from bipolar disorder.  *See* Mental Examination [32] at 492.  The ALJ did have two letters from Dr. Gupta addressing Stringer's condition, but Stringer provided more information during the hearing that Dr. Gupta allegedly told him, which the ALJ disputed.  *See, e.g.*, 3d Hr'g Tr. [32] at 49, 52–53.

On the other hand, an ALJ has a duty to develop "all relevant facts."  *Sun*, 793 F.3d at 509.  This means making "every reasonable effort to help [a claimant] get medical evidence from [their] own medical sources."  20 C.F.R. § 416.912(b)(1).  And this duty is "accentuated" when a plaintiff—like Stringer—is proceeding pro se.  *Sun*, 793 F.3d at 509.  So even if the ALJ believes the testimony would not be "persuasive," 3d Hr'g Tr. [32] at 65–66, without knowing what Dr. Gupta would say based on his observations, it is impossible to know whether his testimony is "reasonably necessary for the full presentation of the case."  *Id.* at 6 (quoting HALLEX 02150.082).

---

[5] Section 404.1521 was amended in 2017 to add that the SSA will not use "medical opinion [among other things] to establish the existence of an impairment(s)."  20 C.F.R. § 404.1521.  But the regulations still say impairments can be established by "acceptable medical source[s]," which includes licensed physicians.  The Court also notes that before the 2017 amendment, the Fifth Circuit held that when medical records are no longer available—like here— "noncontemporaneous medical records are relevant to the determination of whether onset occurred on the date alleged by the claimant."  *Ivy v. Sullivan*, 898 F.2d 1045, 1049 (5th Cir. 1990) (citing *Basinger v. Heckler*, 725 F.2d 1166 (8th Cir. 1984)).

The Court acknowledges Dr. Gupta did not exude a willingness to testify. *See* 1st Gupta Letter [32] at 334; 2d Gupta Letter [32] at 555. But his reluctance didn't prevent the ALJ—armed with enforcement options—from fulfilling his heightened duty to make every reasonable effort to "develop the facts fully and fairly." *Sun*, 793 F.3d at 509; *see* also R&R [46] at 5–7 (describing options ALJ could have used to enforce subpoena). Once Dr. Gupta testifies, it could be that the ALJ could find that Stringer does not satisfy § 404.1521. But a complete record requires more probing.

Finally, the Court notes that the Appeals Council remanded Stringer's claim after the first ALJ found Dr. Gupta's potential testimony immaterial for the same reasons as the second ALJ. Appeals Order [32] at 154. On remand, the ALJ owed a duty to Stringer to either enforce the subpoena or inform him of factual deficiencies Dr. Gupta's absence creates. *See James*, 2022 WL 17650596, at *2; *Emerick*, 2020 WL 4504638, at *3. Neither happened. The Court adopts Judge Harris's well-reasoned recommendation to remand this matter.

B.    Stringer's Objections

Stringer levied two objections, but because the case will be remanded, only the first requires attention. Stringer had asked Judge Harris to order the SSA to pay Dr. Gupta's demanded $10,000-a-day fee, citing Federal Rule of Evidence 706. That rule details compensation procedures for court-appointed expert witnesses. Fed. R. Evid. 706(c). But because Dr. Gupta is not a court-appointed expert, Judge Harris properly found that the argument "lacks merit." R&R [46] at 8; *see also Williams v. Martin*, 570 F. App'x 361, 363 (5th Cir. 2014) (noting Rule 706 is limited to court-appointed witnesses). The Court overrules Stringer's first objection [47].

C.       Motion for Court Cost and Legal Fees

In tandem with his first objection, Stringer filed a motion requesting court costs and legal fees for litigating this case, citing the Equal Access to Justice Act (EAJA).  Mot. [48] at 3.  The EAJA entitles a party who prevails against the United States to attorney's fees and other expenses.  28 U.S.C. § 2412(d)(1)(A).

"Before a court awards attorney's fees [and other expenses] pursuant to the EAJA, 'three statutory conditions must be satisfied.'"  *Mabus v. Comm'r*, No. 1:25-CV-47-TBM-RPM, 2025 WL 3174140, at *1 (S.D. Miss. Nov. 13, 2025) (quoting *Myers v. Sullivan*, 916 F.2d 659, 666 (11th Cir. 1990)).  The first requirement, set forth in 28 U.S.C. § 2412(d)(1)(B), provides a claimant "shall, within thirty days of final judgment in the action, submit to the court an application for fees and other expenses which shows that the party is a prevailing party and is eligible to receive an award under this subsection."  The Court need only discuss the first requirement before denying Stringer's motion.

To start, Stringer is a prevailing party under the EAJA.  Judge Harris recommended remanding Stringer's case to the Commissioner for a new hearing under sentence four of 42 U.S.C. § 405(g).  R&R [46] at 8.  Because this is a sentence-four remand, "which terminates the litigation with victory for the plaintiff," Stringer is entitled to prevailing-party status.  *Shalala v. Schaefer*, 509 U.S. 292, 301 (1993).

Despite prevailing-party status, Stringer's motion was not filed at the proper time.  "An application for attorney's fees [and other expenses] under the EAJA shall be submitted 'within thirty days of final judgment in the action.'"  *Pierce v. Barnhart*, 440 F.3d 657, 661 (5th Cir. 2006) (quoting 28 U.S.C. § 2412(d)(1)(B)).  A "final judgment" as defined by the EAJA is "a judgment that is final and not appealable."  28 U.S.C. § 2412(d)(2)(G).  "The Supreme Court has

explained that a 'final judgment' for purposes of Section 2412(d)(1)(B) is 'a judgment rendered by a court that terminates the civil action for which EAJA fees may be received.'" *Mabus*, 2025 WL 3174140, at *1 (quoting *Melkonyan v. Sullivan*, 501 U.S. 89, 96 (1991)). "In suits to which a federal officer is a party, the time for appeal does not end until 60 days after the entry of a Rule 58 judgment." *Freeman v. Shalala*, 2 F.3d 552, 554 (5th Cir. 1993).

Stringer moved for court costs and legal fees before the Court entered final judgment. *See* Mot. [48] (filed February 23, 2026). His motion is premature. *See* 28 U.S.C. § 2412(d)(1)(B); *see also Pierce v. Barnhart*, 440 F.3d 657, 661 (5th Cir. 2006). Stringer must therefore wait until 60 days after this Order and Judgment are entered, to see if the Commissioner appeals. If the Commissioner does not appeal, then Stringer has 30 days to submit his motion for court costs and legal fees.[6] *See id.*; *see also SandOval v. Comm'r*, No. 5:10-CV-81, 2020 WL 10051750, at *2 (S.D. Tex. Aug. 20, 2020) (enforcing EAJA's 30-day window). Once Stringer timely moves, the Court will consider the merits of his request. But for now, the Court denies his motion for court costs and legal fees for failure to comply with the EAJA's procedural requirements.

IV.     Conclusion

The Court has considered all arguments. Those not specifically addressed would not have altered the result. For the foregoing reasons, the Court overrules all objections, denies Plaintiff's motion for court costs and legal fees [48], and adopts Judge Harris's recommendation to remand the case to the Commissioner for another hearing under sentence four of 42 U.S.C. § 405(g).

---

[6] While the EAJA allows court costs and legal fees, Stringer is not entitled to attorney's fees because they "simply are not available to pro se litigants under the [EAJA]." *Hexamer v. Foreness*, 997 F.2d 93, 94 (5th Cir. 1993) (collecting cases).

**SO ORDERED AND ADJUDGED** this the 30th day of March, 2026.

s/ *Daniel P. Jordan III*
UNITED STATES DISTRICT JUDGE